FILED
2017 Feb-02  PM 12:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER JEFFERSON, | ) | |
|     PLAINTIFF | ) | **CIVIL ACTION NO.** |
| | ) | **2:14-CV-1028-KOB** |
| v. | ) | |
| | ) | **LEAD CASE** |
| BAPTIST HEALTH SYSTEM, INC. | ) | |
|     DEFENDANT | ) | |
| | | |
| | | |
| BAPTIST HEALTH SYSTEM, INC., | ) | |
|     APPLICANT, | ) | |
| | ) | |
| v. | ) | |
| | ) | **CIVIL ACTION NO.** |
| CHRISTOPHER JEFFERSON, | ) | **2:16-CV-1094-KOB** |
|     RESPONDENT. | ) | |
| | ) | **MEMBER CASE** |
| | ) | |

<u>**MEMORANDUM OPINION**</u>

This arbitration matter, in which two cases have been consolidated, is before the court on

five applications.  Christopher Jefferson has filed two application to confirm the arbitration

award: "Respondent's Opposition to Application to Vacate and Request for Confirmation of

Interim Award" (doc. 5 in 16-1094), and "Respondent's Application for Confirmation of Final

Award and for Entry of Final Judgment" (doc. 9 in 16-1094); and Baptist Health System, Inc.

("BHS") has filed three applications to vacate: "Application to Vacate Arbitration Award" (doc.

1 in 16-1094), "Application to Vacate Punitive Damages Arbitration Award" (doc. 12 in 16-

1094), and "Application for Writ Vacating Arbitration Award" (doc. 13 in 16-1094). The

applications have received responses (doc. 5 in 16-1094-Jefferson's opposition to doc.1; doc 10

1

in 16-1094-BHS's response to doc. 9; doc. 15 in 16-1094-Jefferson's response to docs. 12 & 13);

and some have replies (doc. 11 in 16-1094-reply re doc. 9; doc. 16 in 16-1094-BHS's reply re

docs. 12 & 13).

For the reasons stated in this Memorandum Opinion, the court WILL DENY BHS's

applications to vacate (docs. 1, 12, & 13 in 16-1094) and Mr. Jefferson's application to confirm

the Interim Award (doc. 5 in 16-1094); further, the court WILL GRANT Mr. Jefferson's

application to confirm the final award and to enter final judgment in his favor (doc. 9 in 16-

1094).

## **FACTS**

On March 11, 2013, Mr. Jefferson began working for BHS as a security guard.  BHS has

a Dispute Resolution Program ("DRP") that is a multi-page document purporting to bind BHS

and its employees to arbitration "as the sole means of dispute resolution." The DRP lists claims

under the ADA, among others, as disputes covered by the DRP.  The DRP states that "your

decision to accept employment . . . , after receiving notice of this Program, will mean that you

have agreed to and are bound by the terms of the Program."  (Doc. 8-1 in 14-1028, at 2-4).  One

sentence of the DRP states that "arbitration must be initiated within the applicable statute of

limitations," and two sentences later, the DRP states that the employee "should submit a demand

for arbitration within the applicable limitations period provided by law." (Doc. 8-1, at 5).

As part of his employment application process, Mr. Jefferson had electronically signed a

one-page document entitled "Baptist Health System Dispute Resolution Program" that was not

the DRP itself but that referred to the existence of the DRP and acknowledged his agreement to

submit all claims against BHS to binding arbitration.  That one-page document that Mr. Jefferson

electronically signed stated that the DRP includes all claims for violation of federal statutes, including the ADA, but it did not notify Mr. Jefferson that he must file an arbitration demand within the statute of limitations period provided by law nor did it state what the applicable statute of limitations period would be. (Doc. 8-2 in 14-1028).

On April 18, 2013, just over a month after Mr. Jefferson began working for BHS, BHS terminated him.  Mr. Jefferson timely filed a charge of discrimination with the EEOC, and, on March 3, 2014, the EEOC issued a right to sue letter to him.  (Doc. 1-2 in 16-1094).  The ADA provides for a 90-day statute of limitations after the issuance of a right to sue letter, as it expressly incorporates the enforcement mechanisms contained in Title IV.  *See* 42 U.S.C. § 12117(a) (ADA); 42 U.S.C. § 2000e-5 (Title VII); *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999).  On May 30, 2014, within 90 days of the issuance and receipt of the right to sue letter, Mr. Jefferson filed the Complaint against Baptist Health System, Inc. in civil action number 14-1028, alleging disability discrimination in violation of the ADA and ADAAA and acknowledging receipt of the right to sue letter.  (Doc. 1 in 14-1028).  Although BHS's DRP provides that an employee should submit an arbitration demand within the applicable statute of limitations for the claim, Mr. Jefferson did not submit an arbitration demand to AAA within 90 days of receipt of the right to sue letter.

On June 26, 2014, more than 90 days after Mr. Jefferson's receipt of the right to sue letter, BHS filed a motion to compel arbitration and to dismiss the civil action without prejudice, but BHS did not at that time raise any timeliness issues with arbitration or indicate that the statute of limitations barred the arbitration procedure.  (Doc. 8 in 14-1028).  On August 15, 2014, Mr. Jefferson responded to the motion by consenting to arbitration conditioned upon the

magistrate judge's retention of jurisdiction over the matter. (Doc. 10 in 14-1028). On October 22, 2014, more than seven months after the EEOC issued the right to sue letter, and 116 days after BHS filed its motion to compel arbitration, Jefferson filed an arbitration demand with the AAA dated October 17, 2014, attaching the Complaint filed May 30, 2014. (Doc. 1-5 in 16-1094).

The magistrate judge entered a Report and Recommendation on October 23, 2014, which did not note that any party had raised a statute of limitations bar, and the opinion did not address timeliness as to arbitration. On November 13, 2014, the district court judge granted BHS's motion to compel arbitration and stayed the original action pending arbitration (doc. 13 in 14-1028), in accordance with the magistrate judge's recommendation (doc. 12 in 14-1028).

On November 28, 2014, BHS filed an Answer in the arbitration matter, asserting that the statute of limitations was a bar to the arbitration. (Doc. 1-8 in 16-1094). On December 22, 2014, Mr. Jefferson submitted an Amended Complaint in the arbitration matter, asserting claims for disparate treatment and reinstatement claims as well as a failure to accommodate claim. (*See* Doc. 1-9 in 16-1094). On October 2, 2015, BHS filed a motion for summary judgment in the arbitration matter that discussed the merits of the ADA claims and only raised the statute of limitations issue on the last page of the thirty-page brief. (Doc. 1-9, 16-1094). Mr. Jefferson did not expressly address the statute of limitations issue in his response. However, when BHS focused more heavily on that issue in its reply, Mr. Jefferson asked for leave to file a sur-reply, arguing that he had timely invoked arbitration. (Doc. 1-11 & 5-1 in 16-1094). The record does not reflect that the arbitrator gave Mr. Jefferson leave to file the sur-reply, and the arbitrator's opinion addressing the motion for summary judgment stated that Mr. Jefferson did not *expressly*

4

argue against BHS's limitations claim, indicating that the arbitrator did not allow the sur-reply.[1]

(Doc. 1-11, at 14-15 in 16-1094).

On November 18, 2015, the arbitrator granted BHS's motion for summary judgment as to

Mr. Jefferson's disparate treatment termination and reinstatement claims and denied it as to his

accommodation claim.   As to the timeliness issue, the arbitrator reviewed the language of the

DRP and found an inconsistency in the DRP's statements about the necessity to initiate

arbitration within the statute of limitations, noting one statement using the word "must" and

another using the word "should" when addressing initiating arbitration within the statute of

limitations period.  The arbitrator interpreted the "should" language as implying that making a

demand outside the statutory limitations period would be permissible, and rejected BHS's

argument that Mr. Jefferson's arbitration demand outside the statutory limitations period was

untimely.

The arbitrator also noted that BHS had not filed its motion to compel arbitration until

after the 90 day period had expired.  Therefore, to accept BHS's argument and to bar Mr.

Jefferson's claim even though he had timely filed suit would "in essence, enable an employer to

thwart discrimination claims by delaying its response to a Federal/State court complaint until the

applicable limitations period had lapsed."  The arbitrator pointed out that the motion to compel

arbitration sought dismissal of the federal lawsuit without prejudice, which would appear to be

---

[1] Mr. Jefferson has presented to this court evidence that it requested leave from the arbitrator to file a sur-reply that explicitly responded to BHS's timeliness argument, but the record is not clear whether the arbitrator granted Mr. Jefferson leave to file that sur-reply.  The arbitrator's opinion addressing summary judgment states that Mr. Jefferson did not explicitly respond to this argument, which means either that she did not grant leave to him to file the sur-reply, or, as Mr. Jefferson suggests in one brief (doc. 5, at 5 in 16-1094), that the arbitrator later overlooked the sur-reply she allowed him to file.

inconsistent with BHS's position during arbitration proceedings that the claim may proceed only through arbitration and that arbitration is time-barred.

Finally, the arbitrator rejected BHS's argument that Mr. Jefferson did not dispute its limitations claim, noting that while he "did not expressly argue against its limitation claim," his statements that the claims were continuous in nature and that the lawsuit filed within the limitations period was removed to arbitration disputed by implication BHS's limitations claim. Further, the arbitrator noted that the record reflected that Mr. Jefferson had asked the federal court to retain jurisdiction and stay that case, and that, while the record did not include the federal court's order on the parties' motions regarding arbitration, the granting of the stay would toll the limitations period and Mr. Jefferson's claims would relate back to the timely-filed complaint.  (Doc. 1-11 in 16-1094; timeliness discussion at 14-15).

On April 4, 2016, the arbitrator issued "Opinion and Interim Award."  (Docs. 1-12 and 9-1 in 16-1094).  As stated in that Opinion, the arbitrator determined that Mr. Jefferson had established that BHS had violated the ADA, finding that he has a disability within the meaning of the ADA; that he was a "qualified individual" able to perform the essential duties of his job with or without reasonable accommodation; that Mr. Jefferson had requested an accommodation and that his supervisor and the HR Director were aware of his condition and his request for accommodation; that a reasonable accommodation existed; that BHS terminated Mr. Jefferson without attempting to reasonably accommodate his disability; and that Mr. Jefferson is entitled to back pay.  The arbitrator retained jurisdiction over the issue of whether punitive damages were warranted and the calculation of compensatory damages. (Doc. 9-1 in 16-1094).

6

On June 14, 2016, the arbitrator issued "Opinion and Interim Award for Punitive Damages" (doc. 9-2 in 16-1094), awarding to Mr. Jefferson punitive damages in the amount of $65,000 and reasonable attorneys fees and costs, to be awarded based on agreement of the parties, or, if the parties could not agree, to be determined after a petition for further proceedings. The arbitrator retained jurisdiction "over the issue of attorney fees and any remaining question over the calculation of damages." (*Id.* at 5).

On August 1, 2016, the arbitrator issued "Final Award for Attorney's Fees," ordering BHS to pay attorney fees and costs to Mr. Jefferson's counsel in the amount of $81,745. The arbitrator found that the following expenses "are to be bourne as incurred": AAA's administrative fees and expenses totaling $1,900; and the compensation and expenses of Arbitrators totaling $27,283.61. (Doc. 9-3 in 16-1094, at 4).

BHS challenged all three awards on the grounds that the arbitrator had exceeded her authority: "Application to Vacate Arbitration Award" ( doc. 1 in 16-1094 filed on July 5, 2016 and challenging the April 4, 2016 interim award based on timeliness of the invocation of arbitration); "Application to Vacate Punitive Damages Arbitration Award." (doc. 12 in 16-1094 filed on September 13, 2016 challenging the punitive damages arbitration award); and "Application to Vacate Arbitration Award" (doc. 13 in 16-1094 filed in November of 2016, requesting an order vacating the final award for attorney's fees, and, to the extent that this award is the final award encompassing the others, to vacate the final combined award).

Mr. Jefferson filed applications to confirm the interim and final awards, and for entry of final judgment. (Docs. 5 & 9 in 16-1094). Eventually, the 2016 case addressing the arbitrator's

awards and the ADA case that Mr. Jefferson had filed in 2014 were consolidated and assigned to the undersigned.  (Docs. 17, 18 & 20 in 16-1094; Docs. 32 & 34 in 14-1028).

## STANDARD OF REVIEW

When reviewing an arbitration decision, courts apply a standard that is "among the narrowest known to the law."  *Union Pac. R.R. Co. v. Sheehan,* 439 U.S. 89, 91 (1978). "The Federal Arbitration Act presumes that arbitration awards will be confirmed, and judicial review of an arbitration is narrowly limited."  *Rosenweig v. Morgan Stanley & Co., Inc.,* 494 F.3d 1328, 1333 (11th Cir. 2007).  The party requesting vacatur bears the burden to rebut this presumption of confirmation by asserting sufficient grounds to vacate.  *Brown v. ITT Consumer Fin. Corp.,* 211 F.3d 1217, 1223 (11th Cir. 2000).

Section 10 of the Act provides four bases for vacating an arbitration award: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a) (1)-(4).  In Section 10(a), Congress stated that a court "may make an order vacating the award" for these enumerated reasons, and the use of the word "may" as opposed to "must" or "shall" further emphasized the deferential nature of the review.  *See Cat Charter, LLC v. Schurtenberger,* 646 F.3d 836, 843 n. 11 (11th Cir. 2011).  Section 11 allows for modification of an award "[w]here the arbitrators have awarded upon a

8

matter not submitted to them."  9 U.S.C. § 11.  BHS challenges the award under the fourth basis

set out in § 10, stating that the arbitrator exceeded her powers.

    The Eleventh Circuit explained that "arbitration proceedings 'need not follow all of the

niceties of the federal courts; [they] need provide only a fundamentally fair hearing.'" *Indus. Risk*

*Insurers v. M.A.N. Gutehoffnungshuttle GmbH*, 141 F.3d 1434, 1443 (11th Cir. 1998) (quoting

*Grovner v. Georgia Pacific,* 625 F.2d 1289, 1290 (5th Cir. 1980)).  "An arbitrator enjoys wide

latitude in conducting an arbitration hearing.  Arbitration proceedings are not constrained by

formal rules of procedure or evidence."  *Robbins v. Day,* 954 F.2d 679, 685 (11th Cir. 1992),

*overruled on other grounds by First Options of Chicago, Inc. v. Kaplan ,* 514 U.S. 938, 938-39

(1955).  AAA arbitration rules "are intentionally written loosely, in order to allow arbitrators to

resolve disputes without the many procedural requirements of litigation."  *Indus. Risk,* 141 F.3d

at 1443.

    The standard, while deferential, is not a rubber stamp.  An arbiter's "award is legitimate

only so long as it draws its essence" from the arbitration contract.  *Loveless v. Eastern Air Lines,*

*Inc.,* 681 F.2d 1272, 1279 (11th Cir. 1982) (quoting *United Steelworks of Am. v. Enter. Wheel &*

*Car Corp.,* 363 U.S. 593, 597 (1960)).  If the award does not do so, then a court must vacate it.

For example, "the former fifth circuit determined that an arbitrator exceeded his jurisdiction by

basing his award solely upon his perception of the equities of the situation without even referring

to the collective bargaining agreement." *Id.* (discussing *W.R. Grace & Co v. Local Union No.*

*759, United Rubber Workers*, 652 F.2d 1248, 1255 (5th Cir. 1981)).

## **DISCUSSION**

### **A.  Applications to Vacate**

In its three applications to vacate the arbitration award, BHS asserts that the arbitrator

exceeded her authority, and thus, brings this action pursuant to § 10(a)(4) of the Act.  Courts read

this section narrowly, applying it to circumstances when the arbitrator decided an issue the

parties had not submitted or when the arbitration agreement did not authorize the relief granted.

*See Morgan Stanley & Co., LLC v. Core Fund. Int'l Corp.,* 884 F. Supp. 2d 1229, 1231 (M.D.

Fla. 2012) (citing *Blue Tee Corp. v. Koehring Co.,* 999 F.2d 633, 636 (2d Cir. 1993); 2 DOMKE

On COMMERCIAL ARBITRATION § 39:6 (2012)).  "'[A]ny doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration.'" *Mitsubishi Motors Corp. v. Soler*

*Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Memorial Hosp. v.*

*Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)).  Neither party asserts that the arbitrator

decided an issue the parties had not submitted.  Rather, BHS asserts that the arbitrator exceeded

her authority by (1) allowing the arbitration to go forward even though it was barred by the

statute of limitations because Mr. Jefferson did not formally present an arbitration demand with

the AAA until after the 90-day statutory period had run; (2) awarding a punitive damages award

and fee award in addition to a liability award, instead of a single award.

### 1.  Timeliness

In its first application to vacate the arbitration award, BHS asserts that the arbitrator

exceeded her authority because she allowed the arbitration to proceed even though BHS claims

that the statute of limitations barred it.  According to its argument, the arbitration agreement

provides that arbitration must be initiated within the applicable statute of limitations, which is 90

days from the right to sue letter in ADA cases.  *See* 42 U.S.C. § 12117(a) (ADA); 42 U.S.C. §

2000e-5(f)(1) (Title VII); *Zillyette,* 179 F.3d at 1339.  No dispute exists that Mr. Jefferson filed

*suit* within 90 days of the issuance of the right to sue letter on March 3, 2014, and no dispute

exists that he did not file a formal demand with AAA until after the 90-day period had expired.

In light of these facts, BHS asserts that the arbitrator had no authority under the arbitration

contract to allow the arbitration to proceed.

Mr. Jefferson responds that the arbitrator had authority under AAA Rule 4 to resolve any

disputes over the timeliness of a claim and that such a dispute existed between BHS and Mr.

Jefferson; that the statute of limitations is an issue of procedural arbitrability appropriate for the

arbitrator to decide; that the arbitrator specifically addressed the challenge to timeliness and ruled

in Mr. Jefferson's favor; and that her decision was based in part upon her interpretation of the

arbitration contract, which interpretation had an arguable basis.

The Act "makes clear [that] arbitration is a creature of contract [, and] arbitrators derive

their power from the parties' agreement."  *Cat Charter,* 646 F.3d at 843.  Therefore, to evaluate

whether the arbitrator exceeded her authority, the court first turns to the arbitration agreement

itself to determine the scope of the arbitrator's authority.  The relevant provisions of the

arbitration agreement state that AAA Rules govern except when they conflict with the Program;

that the arbitrator will apply the substantive law of the state in which the claim arose; and that the

arbitrator has the exclusive power to resolve disputes as to the interpretation of the Program.[2]

---

[2] The DRP states in relevant part:

**E.  THE ARBITRATION PROCESS**

Any Arbitration under this Program shall be in accordance with the AAA's <u>National</u>
<u>Rules for the Resolution of Employment Disputes</u> ("the AAA Rules"), except that if any party
establishes that a material adverse inconsistency between the Program and the AAA Rules, the

In the instant case, BHS challenges the arbitrator's ruling on the timeliness issue. The DRP contract provides that AAA's rules govern unless they conflict with the DRP, and, as BHS acknowledges in its first application, AAA Rule 4 provides that the arbitrator has authority to determine disputes over the timeliness of the arbitration demand. *See* Rule 4, AAA Rules, adr.org ("Any dispute over the timeliness of the demand shall be referred to the arbitrator."); *see also Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84-85 (2002) (holding "that the applicability of the NASD time limit rule addressing whether the submission of the matter to arbitration was timely is a matter presumptively for the arbitrator," because the "time limit rule falls within the class of gateway procedural disputes that do not present what our cases have called 'questions of arbitrability.'"); *Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.,* 991 F.2d 1545, 1548 n. 1 (11th Cir. 1993) ("whether a party has made a timely demand for arbitration upon the other party should generally be decided by the arbitrator").

To the extent that BHS argued that no dispute existed as to the untimeliness of Mr. Jefferson's arbitration demand, that argument fails. BHS raised the issue and the arbitrator addressed it. To the extent, if any, that Mr. Jefferson needed to respond to the issue, the

---

arbitrator shall apply the Program. The parties acknowledge that this provision alters the AAA Rules.
***
The Arbitrator shall . . .apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as may be applicable ot the dispute. The Arbitrator shall have the power to award all relief that a court would be able to award under the circumstance. The Arbitrator, and not any federal, state, or local agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, formation, or scope of this Program . . . . (Doc. 8-1 in 14-1028).

arbitrator found that Mr. Jefferson had noted facts in his response about timeliness that addressed this issue, at least impliedly.  In any event, the arbitrator specifically addressed the dispute, finding that she had the authority under the DRP and the AAA to resolve the dispute by making a timeliness determination.  This court cannot say that the arbitrator exceeded her authority in deciding that a timeliness dispute existed and that she had power under the DRP to address it.

Given that authority, the court next reviews the arbitrator's decision on the timeliness dispute.  That decision was based in part on an interpretation of the arbitration contract, the DRP. The arbitrator quoted the DRP, and found, based on its wording, that the contract "was itself inconsistent as to the filing requirements."  The arbitrator further found, based on the DRP language, that because "[BHS]'s own DRP implies that it is permissible to make a demand for arbitration outside the statutory limitations period, its argument to the contrary is unavailing." (Doc. 1-11, at 14).  Therefore, the arbitrator found that the demand was timely and that the claim based on BHS's alleged failure to accommodate could proceed.

This court's own review of this decision is limited.  Here, the arbitrator had authority to resolve a dispute as to the timeliness of the arbitration demand, and her resolution of the dispute was based on the language of the arbitration contract.  The court FINDS that the arbitrator's decision had an arguable basis that "draws its essence from the contract."  *Loveless,* 681 F.2d at 1279 (1982) (quoting *United Steelworks,* 363 U.S. at 597)).   Therefore, the court FINDS that BHS has not met its burden to prove that the arbitrator exceeded her authority when she allowed the arbitration to proceed; and that the arbitrator's award is not due to be vacated on this ground.

The arbitrator also provided alternative grounds for finding the arbitration proceeding to be timely.  The court joins the arbitrator in her concern that BHS would wait until after the

13

limitations period had run before filing a motion to compel arbitration and then wait until it had

obtained Mr. Jefferson's consent to arbitrate and the court's referral of the civil action to

arbitration before claiming that the arbitration was barred as untimely.  BHS *itself* sought to

compel arbitration *after* what it now claims was the deadline to submit an arbitration demand;

BHS cannot have it both ways.  BHS's actions could represent possible gaming the system and

manipulation of the court and Mr. Jefferson in an attempt to deny him any remedy when he had

timely expressed a desire to pursue his claim by filing suit within 90 days.  Mr Jefferson's

timely-filed suit was referred to arbitration and stayed in federal court pending those proceedings,

so the genesis of the arbitration proceeding is arguably *not the arbitration demand*, which

attached a copy of the timely-filed Complaint, but *the filing of the suit itself*.  As an alternative

ruling, based on these grounds, the court FINDS that BHS has not met its burden to establish that

the arbitrator exceeded her authority when she found that the arbitration's initiation was timely.

    2.  Multiple Interim Awards

    BHS also points to the multiple awards that the arbitrator issued as exceeding her

authority, because Rule 39 of the AAA Rules provides for a single award.  This argument is

based on the fact that the arbitrator issued three awards: "Opinion and Interim Award" (doc. 9-1

in 16-1094, finding that BHS violated the ADA and that Mr. Jefferson is entitled to back pay in a

specified amount and retaining jurisdiction over the issue of punitive damages and the

calculation of compensatory damages); "Opinion and Interim Award for Punitive Damages"

(doc. 9-2 in 16-1094; awarding punitive damages in the amount of $65,000, and retaining

jurisdiction over the issue of attorneys fees and any remaining questions over the calculation of

damages); and "Final Award for Attorney's Fees" (doc. 9-3 in 16-1094, ordering BHS to pay

attorneys fees and costs in the amount of $81,745, and listing the amount of AAA and Arbitrator fees, to be borne as incurred).  In its last application, BHS acknowledges that applications regarding the arbitrator's interim awards might not have been ripe for review until the final award, but explained that it was attempting to preserve its objections and arguments.

The court rejects BHS's argument regarding the inappropriateness of these awards.  The three awards together make up one final award, with the first two entitled as "interim" and retaining jurisdiction for the remaining issues.  Addressing the arbitration in such phases is reasonable and provides no grounds for BHS's assertion that the arbitrator exceeded her authority. The court rejects BHS's argument, and FINDS that BHS has not met its burden of proving that the arbitrator exceeded her authority based on what BHS improperly characterized as  multiple awards; the arbitrator's award is not due to be vacated on this ground.

Having found that BHS has not met its burden of proof that the arbitrator exceeded her authority, the court FINDS that BHS's three applications to vacate are due to be DENIED.

**B.  Applications to Confirm**

Mr. Jefferson presents two applications: one to confirm the interim arbitration award (doc. 5); and one to confirm the final award and for entry of final judgment (doc. 9). The court WILL DENY the motion to confirm the interim award dated April 4, 2016.  The April 4, 2016 does not purport to be a final order on its own, and, in fact, specifically stated that it was an interim award and that other issues would be addressed in the future.  On July 21, 2016, when Mr. Jefferson filed the motion to confirm this award, the arbitrator had issued two interim awards but not yet issued a final award.  She did not do so until August 1, 2016.  Given that the arbitrator has now issued a final award that combines an award of attorneys fees and costs with the two

15

interim awards, the court FINDS that it should deny the motion to confirm the interim award and only consider Mr. Jefferson's second application, which attaches all three awards and requests confirmation of the "final award."

Section 9 of the FAA provides that, upon application of any party to the arbitration, the court *must* confirm the arbitrator's award unless it is vacated, modified, or corrected in accordance with sections 10 and 11 of the statute. 9 U.S.C. § 9. "[T]he FAA 'imposes a heavy presumption in favor of confirming arbitration awards'; therefore, 'a court's confirmation of an arbitration award is usually routine or summary.'" *Cat Charter,* 646 F.3d at 842 (quoting *Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1288 (11th Cir. 2002)). As discussed previously, BHS has not met its burden of rebutting that presumption; accordingly, this court *must* and *will* confirm the arbitrator's award. The court WILL GRANT Mr. Jefferson's application as to the final award and WILL CONFIRM the arbitrator's award. That award provides that BHS must pay to Mr. Jefferson the following amounts:

| | |
|---|---|
| Back pay: | $ 25,000[3] (doc. 9-1 in 16-1094) |
| Punitive damages: | $ 65,000 (doc. 9-2 in 16-1094) |
| Attorney fees & costs as of 8/1/16: | $ 81,745 (doc. 9-3 in 16-1094) |
| Total Award: | $171,745 |

---

[3] In the April 4, 2016 Interim Award, the arbitrator found that Mr. Jefferson was entitled to "back pay for 18 hours of work per week at the rate of $13.32 per hour from April 18, 2013 to the date of this Interim Award." (Doc. 9-1 in 16-1094). In the second Interim Award dated June 14, 2016, the arbitrator noted that "Respondent's Punitive Damages Brief calculates the back pay damages as approximately $25,000." (Doc. 9-2, in 16-1094). In his second application for confirmation, Mr. Jefferson calculates the back pay as $25,245.41 as of April 4, 2016 but states that "in the interest of bringing these proceedings to a speedy resolution, Plaintiff seeks only a judgment in the amount of backpay conceded by Baptist" or $25,000. (Doc. 9 at 2 in 16-1094).

16

The court WILL ENTER a judgment in favor of Mr. Jefferson and against BHS consistent with that award, which includes attorney fees and costs as of August 1, 2016, the date of the final arbitration award.

The court notes that the award also provided as follows: "The Administrative fees and expenses of the AAA totaling $1,900.00 are to be borne as incurred.  The Compensation and expenses of Arbitrators totaling $27,283.61 are to be borne as incurred."  (Doc. 9-3, at 4 in 16-1094).  As this award provides that these amounts be borne as incurred, the judgment need not and does not include those amounts, although the court likewise WILL CONFIRM this part of the award.

The court notes that the applications in front of it were to confirm or vacate the arbitration award, which applications addressed neither costs and attorney fees for proceedings in this court nor the prevailing party's entitlement to them.  The court WILL RETAIN JURISDICTION in this matter to address any post-judgment motions and WILL SET the deadline for filing any such motions at 30 days from the date of this Memorandum Opinion and the accompanying Judgment.

Dated this 2nd day of February, 2017.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE